# United States District Court
for the
## Eastern District of Tennessee

U.S.A. vs. Eric Crockett                                    Docket No. 1:13CR00133-003

**Petition for Action on Conditions of Pretrial Release**

      COMES NOW Candace Lindsey, U. S. Probation Officer, presenting an official report upon the conduct of defendant Eric Crockett, who was placed under pretrial release supervision by The Honorable Magistrate Judge Susan K. Lee sitting in the court in the Eastern District of Tennessee in Chattanooga, on December 12, 2013, under the following conditions:

| | |
|---|---|
| 8(a) | Report to United States Probation Officer Candace Lindsey as directed at (423) 752-5193, ext. 3141 after the defendant's release. |
| 8(b) | Execute a $30,000 unsecured bond. |
| 8(n) | Refrain from possessing a firearm, destructive device, or other dangerous weapon. |
| 8(o) | Refrain from ANY use of alcohol. |
| 8(p) | Refrain from any use or unlawful possession of a narcotic drug or other controlled substance unless prescribed by a licensed medical practitioner. |
| 8(q) | Submit to any method of testing required by the United States Probation Officer for determining whether the defendant is using a prohibited substance. |
| 8(r) | Participate in a program or inpatient or outpatient substance abuse therapy and counseling if deemed advisable by the United States Probation Officer. |
| 8(u) | Report as soon as possible to the United States Probation Officer if any contact with any law enforcement personnel, including, but not limited to any arrest, questioning or traffic stop. |
| 8(y) | The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the District Court. |
| 8(z) | The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer. |

**Respectfully presenting petition for action of court and for cause as follows:**
(if short insert here; if lengthy write on separate and attach)

On December 12, 2013, the defendant appeared before Magistrate Judge Susan K. Lee for an initial appearance and was granted a court-appointed attorney to represent him based on the information he provided on his financial affidavit. While he was ultimately released on bond under pretrial supervision, it would later be discovered that Mr. Crockett provided several false statements concerning his financial status and living situation to the Courts.

On December 16, 2013, this officer made contact with the defendant at his reported residence for the purpose of conducting a home assessment. Mr. Crockett reported to USPO Williams during his initial interview that he resided with his sister, Lawanda Reese, and had done so off and on for the past four years. Upon arrival to the defendant's home, Mr. Crockett was advised that this officer was there to conduct a home assessment and that he needed to show me around the house. He agreed to

do so. He advised that his sister and her two adult sons were present in the home at the time. The defendant showed this officer around the home which did not appear to include any space for him nor were any of his belongings visible. He was questioned about where he slept and he identified a small couch in the living room as the place that he slept. He was then questioned about where his belongings were located and he said that they were all over the place which suggested that none of them were presently at his sister's residence.

He was advised that this officer believed that he was being untruthful about living with his sister and after being questioned repeatedly about how long he had been residing with Ms. Reese, Mr. Crockett finally admitted that he currently had a home of his own that he had been renting for approximately two months. He was verbally reprimanded and advised that he was currently in violation of his conditions of release for being untruthful and providing a false address. He was informed that this officer would need to make another home inspection at his correct residence.

On December 18, 2013, this officer arrived at the defendant's newly reported residence at 1213 Springview Drive in Chattanooga, Tennessee. This is the residence that he reported that he had been living at for approximately two months. Upon arrival to the residence, this officer observed that the defendant's residence was completely furnished. He had two separate closets full of clothes and shoes. Mr. Crockett was questioned about his employment status and he advised that he was unemployed and had been since around June of 2013. He reported that his rent was $750/month in which his sister provides him with $500 on a monthly basis towards his rent and he pays the rest from his savings that he accumulated while employed. Mr. Crockett was asked how much he currently had in his savings and he stated that he only had a couple of hundred dollars. Mr. Crockett was informed that this officer found it to be very suspicious that he has his own home that is completely furnished that he intentionally failed to identify as his place of residence at the time of his arrest. He was further advised that from this point forward, there could not be anymore instances of untruthfulness or he would face the possibility of being taken before the Court for bond revocation proceedings.

On December 19, 2013, due to the defendant's apprehension in providing truthful information about his residence, this officer decided to review the defendant's financial affidavit for accuracy since it appeared that he intentionally failed to disclose information regarding his true residence which was complete with household furnishings. Several discrepancies were discovered. When asked on the financial affidavit if he had received within the past 12 months any income from rent payments, other sources, etc., Mr. Crockett indicated that he had not. However, Mr. Crockett admitted that his sister, Lawanda Reese, has provided him with income for the purposes of paying rent since he had been living in his home. When asked on the financial affidavit if he has any cash on hand, Mr. Crockett indicated that he did not. However, Mr. Crockett indicated during our field contact on December 18, 2013, that he had a few hundred dollars saved. When asked on the financial affidavit about his debts and monthly bills, Mr. Crockett named utilities as his only bill in the amount of $150. Mr. Crockett indicated to USPO Williams during his intake interview that the $150 in utilities was the amount that his sister charged him on a monthly basis for residing at her residence. However, Mr.

Crockett failed to list the rent and utilities that he pays monthly at his own residence. Mr. Crockett was instructed to report to the probation office by 2:00 p.m. on this date and to bring a copy of his lease for the home he is currently renting.

Mr. Crockett reported to the probation office as instructed. He provided a copy of his lease as instructed. Upon review, the lease indicates that the rent is $925 per month. In addition, the lease was in the name of Tonya Garth, who Mr. Crockett states is the grandmother of one of his children. He stated that he could not get a lease in his name, but the residence was his and he was responsible for the rent. When questioned about the discrepancy in the amount of rent he stated he paid as opposed to the amount on the lease agreement, Mr. Crockett stated that he had an agreement with the landlord that if he cut the grass on the property then he would only have to pay $750 a month in rent and if he did not do so, then the rent would be $925 a month. There was no indication on the lease agreement to this provision. Mr. Crockett then professed that it was a verbal agreement and nothing was ever placed in writing. Mr. Crockett was asked whether or not he paid his rent for the month of December and he stated that he had. He was then asked how much he paid and he admitted that he paid $925 and not the $750 that he stated was the amount he paid monthly.

Mr. Crockett was informed that we wanted to speak with his landlord and verify some of the information that he was reporting to us. He was asked if he had his landlord's telephone number and he advised that he had the number but that it was in his cell phone. He stated that he left his cell phone in the vehicle of his friend "Taye" that dropped him off. He was then asked that if he left his cell phone in his friend's vehicle, how would he contact his friend to let him know when to come back and pick him up? Mr. Crockett responded by saying that he was would like to use our phone to contact his friend and that he knew his friend's telephone number by memory. He was allowed to use our phone in an attempt to contact his friend. Mr. Crockett attempted to call several different numbers in which none of them was the number to his friend "Taye." SUSPO Landers and this officer both became very suspicious about the whether or not the defendant was dropped off at the probation office by a friend or if he himself drove to the probation office and did not want to admit doing so for fear that we would see that he had a vehicle of his own. He was asked to empty out his pockets so that we could verify whether or not he had any car keys on his person. The defendant complied and upon doing so pulled out a wad of money and no keys. Mr. Crockett was then asked to count out all of his money as he only reported that he had no more than a couple of hundred dollars saved up. Mr. Crockett counted out $680 and stated that his sister, Lawanda Reese, gave him $450 the night before so that he could do some Christmas shopping. According to Mr. Crockett, his sister not only gave him $500 at the beginning of the month to pay his rent but also gave him $450 for Christmas shopping for his children.

This conversation became so lengthy that eventually CUSPO Anderson offered some sound advice for Mr. Crockett which included a warning to adhere to all conditions of supervision, especially that of remaining truthful at all times or face being brought before the Court on violations. Mr. Crockett was then instructed to go outside and wait on his friend to come back and pick him up. He was told

that once his friend arrives, he needed to come back inside the building and provide the telephone number to his landlord.

This officer went downstairs on the main floor of the federal building by the court security station before Mr. Crockett could leave SUSPO Landers' office. While down there, it was discovered that Mr. Crockett's cell phone was actually checked in at cell phone station in which all visitors are required to leave their cell phones at upon entry into the building. A call was placed to Mr. Crockett's cell phone number and the cell phone located at the cell phone station began to ring. Court security officer Frank Otis verified that he was present when Mr. Crockett left his cell phone at the cell phone station when he arrived.

Once Mr. Crockett made his way down to the lobby, this officer observed him walk in and out of the courthouse several times, purposely ignoring his cell phone, and appearing to be looking out for his friend "Taye" to pull up in front of the courthouse to pick him up. He soon entered one last time, asked a court security officer to use the phone on 3rd floor at the Clerk's office, then came back down to the main floor of the courthouse. As he walked back onto the main floor, Mr. Crockett nonchalantly walked over to the cell phone station and grabbed his cell phone. This officer immediately asked why he was grabbing that cell phone since he advised that he left his cell phone in his friend's vehicle. The defendant did not immediately provide an answer and this officer asked him was that his cell phone and if so how did it get there. The defendant responded by saying that it was his cell phone and that his friend who dropped him off must have come inside and placed his phone at the cell phone station. He was then asked by this officer if he placed the cell phone at the station himself and he responded by saying that he did not recall if he did so or not. He was instructed to go back up to the probation office where he was reprimanded again by CUSPO Anderson and SUSPO Landers. While in the probation office, Mr. Crockett's friend "Taye" called the defendant's cell phone and advised that he was outside of the courthouse and was waiting to give Mr. Crockett a ride home. SUSPO Landers went outside to speak with "Taye" and he advised that her that he never had possession of the defendant's cell phone and that he had not been inside of the federal building. SUSPO Landers returned to the probation office to advise this officer, with Mr. Crockett present, that of what was relayed to her from the defendant's friend "Taye." Mr. Crockett failed to provide a viable answer for his untruthfulness and was sternly verbally reprimanded. He was informed that all incidents detailed above would be reported to the Court.

Since the time that Mr. Crockett's term of pretrial release began, he has provided multiple untruthful answers about his residence and finances. It is this officer's position that Mr. Crockett has remained deceptive about these things in an effort to hide his true financial status from the Court.

## PRAYING THAT THE COURT WILL ORDER

That a **Warrant** be issued and the defendant be arrested and brought before the Court for a hearing to show cause why his bond should not be revoked.

I declare that under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

*Candace Lindsey*
Candace Lindsey
2013.12.31 19:55:12 -05'00'

Candace Lindsey
U.S. Probation Officer

Approved by:

*Janet F. Landers*
Janet F. Landers
2013.12.31 09:53:21 -05'00'

Janet F. Landers
Supervising U.S. Probation Officer
CLL:yc

## ORDER OF COURT

Considered and ordered this __2nd__ day of __January__, 20__14__, and ordered filed and made a part of the records in the above case. This petition is to be placed under seal until the defendant is arrested or appears in court.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE